United States Courts
Southern District of Texas
FILED

*June 18, 2026*

Nathan Ochsner, Clerk of Court

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| | § | **4:26-cr-360** |
| **v.** | § | **Criminal No. _____** |
| | § | |
| **PLESHETTE JOHNSON-WIGGINS,** | § | |
| **Defendant.** | § | |

## INFORMATION

The United States Attorney for the Southern District of Texas charges:

## GENERAL ALLEGATIONS

At all times material to this Information, unless otherwise specified:

### The Federal Employee Compensation Act and Health Care Benefits

1.     The Federal Employee's Compensation Act ("FECA") provided for payment of workers' compensation benefits to federal employees who suffered an injury, disease, or death in the performance of duty.

2.     FECA was a health care benefit program as defined in 18 U.S.C. § 24(b), and affected interstate commerce.

3.     The Department of Labor ("DOL") Office of Workers Compensation Program ("OWCP") administered the benefits under FECA. Providers of health care services were required to enroll with OWCP to receive a provider identification number and reimbursement under FECA. Form OWCP-1168 was used for enrollment and updating provider information. By completing and submitting Form OWCP-1168, a provider certified that all the Federal and State licensure and regulatory requirements applicable to their provider type were satisfied.

### Coverage and Billing for Physical Therapy

4.     OWCP providers were required to identify in each claim the services provided and

use identifiers including American Medical Association Current Procedural Technology ("CPT") codes. All claims submitted were required to be supported by medical evidence. The submission of a claim and acceptance of payment by a provider signified that the service for which reimbursement was sought was performed as described, necessary, appropriate, and properly billed in accordance with accepted industry standards. It was not within industry standards, among other things, to charge for services not provided or to charge for services of a professional when an unlicensed, uncertified, and/or untrained aide performed the services. Payments were sent to providers via electronic funds transfer ("EFT"). Remittance notices that listed all the claims paid on each EFT were sent to providers.

5.   CPT codes were designed to be a uniform and accurate method of reporting and communicating medical services and procedures between physicians, health care providers, patients, and third parties. The following CPT codes were intended to be used when a physician or qualified health care professional had direct one-on-one patient contact: 97110 for therapeutic procedures, 97530 for therapeutic activities, 97140 for manual therapy techniques, and 97124 for massage. For physical therapy codes, one unit of treatment was 15 minutes.

### The Defendant, Relevant Entity, and Relevant Individual

6.   Defendant PLESHETTE JOHNSON-WIGGINS was a resident of Fort Bend County, Texas. JOHNSON-WIGGINS was a licensed chiropractor registered with the Texas Board of Chiropractic Examiners ("TBCE") to provide chiropractic services in Texas.

7.   "Co-Conspirator 1" was a resident of Houston, Texas. Co-Conspirator 1 held no licenses with the TBCE.

8.   Advanced Functional Rehab ("AFR") was a purported physical therapy business co-owned by JOHNSON-WIGGINS and Co-Conspirator 1 and located in Bellaire, Texas.

## COUNT ONE
### Conspiracy to Commit Health Care Fraud
### (18 U.S.C. § 1349)

9.    Paragraphs 1 through 8 of this Information are re-alleged and incorporated by reference as if fully set forth herein.

10.    Beginning in or around January 2020, and continuing through in or around April 2026, in the Houston Division of the Southern District of Texas and elsewhere, the Defendant,

**PLESHETTE JOHNSON-WIGGINS,**

along with Co-Conspirator 1 and other individuals known and unknown, knowingly and willfully agreed and conspired with each other and others to commit health care fraud, in violation of 18 U.S.C. § 1347, that is, to execute a scheme and artifice to defraud FECA, a health care benefit program as defined in 18 U.S.C. § 24(b), and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money owned by and under the custody and control of FECA.

### Purpose of the Conspiracy

11.    It was the purpose of the conspiracy for JOHNSON-WIGGINS, Co-Conspirator 1, and others to unlawfully enrich themselves through submitting and causing the submission of false and fraudulent claims for physical and massage therapy services that were not provided and not provided as billed.

### Manner and Means

12.    The manner and means by which JOHNSON-WIGGINS, Co-Conspirator 1, and others effected the objects of the conspiracy and scheme to defraud included the following:

13.    JOHNSON-WIGGINS and Co-Conspirator 1 were the co-owners of AFR.

14.    In or around September 2015, JOHNSON-WIGGINS filed, and caused to be filed,

3

an OWCP-1168 application for AFR. The OWCP-1168 required licensure and certification information for all applicants. The OWCP-1168 listed JOHNSON-WIGGINS as the sole provider at AFR.

15. JOHNSON-WIGGINS knew that Co-Conspirator 1 was not a licensed and certified chiropractor and that he could not be enrolled as a DOL-OWCP provider.

16. AFR re-enrolled with DOL-OWCP in August 2018 and November 2019, again omitting Co-Conspirator 1 from its application.

17. Throughout the conspiracy, JOHNSON-WIGGINS and Co-Conspirator 1 nevertheless held out Co-Conspirator 1 to patients and others as a chiropractor, and Co-Conspirator 1 often "supervised" physical therapy.

18. JOHNSON-WIGGINS and Co-Conspirator 1 submitted and caused to be submitted false and fraudulent claims to DOL-OWCP for direct one-on-one physical therapy when the patients were, among other things:

    a. Watching television;

    b. Socializing with Co-Conspirator 1, AFR staff, and other patients;

    c. Sitting and using their personal phones;

    d. Eating; and

    e. Independently stretching or using treadmills, hand weights, and exercise bicycles.

19. JOHNSON-WIGGINS and Co-Conspirator 1 submitted, and caused to be submitted, false and fraudulent claims to DOL-OWCP for direct one-on-one patient massage therapy when the patients self-performed massages using a massage gun, or received a massage from an unlicensed employee with no formal medical training.

20.     JOHNSON-WIGGINS and Co-Conspirator 1 signed falsified daily treatment notes for physical therapy and massage therapy services that they did not provide or supervise and that did not accurately reflect the actual services provided at AFR. These treatment notes were then submitted to DOL-OWCP in support of AFR's false claims for payment.

21.     Throughout the conspiracy, JOHNSON-WIGGINS and Co-Conspirator 1 were sometimes not present at AFR on days that AFR billed DOL-OWCP for one-on-one physical therapy services.

22.     When JOHNSON-WIGGINS and Co-Conspirator 1 were not present, AFR utilized a home-security camera to monitor AFR's physical therapy room and to watch patients. JOHNSON-WIGGINS knew this was not an acceptable means of providing physical therapy services.

23.     When patients complained about the services at AFR, such as a requirement for some patients to visit AFR three times a week for two hours each day, Co-Conspirator 1 would threaten patients that if they did not attend or did not stay at AFR for the entire time period, the patients would lose their workers' compensation benefits or would be required to return to work full-time.

24.     JOHNSON-WIGGINS and Co-Conspirator 1 submitted and caused to be submitted to FECA through OWCP at least $3 million in claims for physical therapy and massage therapy that was not provided, not provided as billed, or otherwise ineligible for reimbursement, and for which FECA paid AFR approximately $2.7 million.

All in violation of Title 18, United States Code, Section 1349.

### NOTICE OF CRIMINAL FORFEITURE
**(18 U.S.C. § 982(a)(7), and 28 U.S.C. § 2461(c))**

25.     The factual allegations in the preceding paragraphs are incorporated by reference

and re-alleged as though fully set forth herein.

26.     Pursuant to 18 U.S.C. § Section 982(a)(7) and 28 U.S.C. § 2461(c), and upon conviction of Count One of this Information, PLESHETTE JOHNSON-WIGGINS shall forfeit to the United States all right, title, and interest in any and all property, real or personal, involved in the commission of such offense, including all property constituting proceeds obtained as a result of a Federal health care offense.

27.     Defendant PLESHETTE JOHNSON-WIGGINS is notified that upon conviction, a money judgment may be imposed against her. If any of the property described above, as a result of any act or omission of the Defendant:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property up to the amount of the money judgment pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).


JOHN G.E. MARCK
ACTING UNITED STATES ATTORNEY

LORINDA LARYEA
CHIEF
FRAUD SECTION, CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

_Emily Reeder-Ricchetti_
EMILY REEDER-RICCHETTI
TRIAL ATTORNEY
FRAUD SECTION, CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE